UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMED MUQTAR JARANOW,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>PAMELA BONDI, Attorney General of the United States, et al.,<br><br>　　　　　　　Respondents. | CASE NO. 2:25-cv-02396-TL<br><br>ORDER ON WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Mohamed Jaranow's Application for a Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Petitioner, who is currently detained at the Northwest ICE Processing Center ("NWIPC"), brings a habeas petition asserting that his continued detention violates both the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, and the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 1. He also seeks relief regarding potential removal to a third country. *Id.* Lastly, he seeks an order that Respondents may not re-detain him without holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or

ORDER ON WRIT OF HABEAS CORPUS – 1

danger to the community by clear and convincing evidence based on changed circumstances from Petitioner's previous release. *Id*. Respondents are Pamela Bondi, U.S. Attorney General; Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Laura Hermosillo, Acting Field Officer Director of Enforcement and Removal Operations, Seattle Field Office, Immigration Customs Enforcement ("ICE") (collectively, "Respondents"); and Bruce Scott,[1] Warden of NWIPC. Respondents filed a response arguing that Petitioner's continued detention does not violate Due Process and asserting that Petitioner's claims regarding third-country removal are not ripe for consideration. Dkt. No. 11. Having considered Petitioner's petition, Respondents' response, Petitioner's reply (Dkt. No. 14), Petitioner's notice of supplemental authority (Dkt. No. 15) ("supplemental authority"), and the relevant record, the Court GRANTS in part and DENIES in part Petitioner's petition.

## I.   BACKGROUND

Petitioner was born on January 6, 1981, in a refugee camp in Somalia. Dkt. No. 1 at 6. Petitioner is a citizen of Somalia (*id*. at 5) and emigrated to the United States when he was eight years old (*id*. at 6).[2] On November 26, 1996, Petitioner became a Lawful Permanent Resident ("LPR"). Dkt. No. 12 (De Castro Decl.) ¶ 5. On March 23, 2018, Petitioner was convicted of serious crimes in Minnesota and was sentenced to a prison term of 90 months. *Id*. ¶ 6–7. As a

---

[1] Although the U.S. Attorney's Office states that it does not represent the NWIPC warden, and the warden has not appeared or otherwise participated in this case, the Court finds that it is still appropriate to proceed and adjudicate the merits of the petition here, because: (1) the purpose of naming the custodian in a habeas petition is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) the federal government often represents the warden's interests, as it does in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[2] Department of Homeland Security Deportation Officer Cristhian De Castro's declaration states that his records show Petitioner was admitted to the United States as a refugee on September 7, 1995. Dkt. No. 12 (De Castro Decl.) ¶ 4.

result of these convictions, Petitioner was issued a Notice to Appear ("NTA") alleging he was removable based on the underlying convictions. *Id.* ¶ 8. On April 22, 2021, while serving his prison sentence, Petitioner was ordered removed by an immigration judge. Dkt. No. 11 at 2. Petitioner appealed the order, but it became final on September 1, 2021, when the Board of Immigration Appeals denied his appeal. *Id.*

After Petitioner served his criminal prison term and was released, he was taken into immigration custody on December 12, 2022. *Id.* On March 13, 2023, Petitioner was released on an Order of Supervision ("OSUP") because, at that time, there was not a significant likelihood of his removal to Somalia in the reasonably foreseeable future. *Id.* There are no allegations by Respondents that Petitioner violated any of the terms of his OSUP. *See generally* Dkt. No. 11. After nearly two and a half years in the community, Petitioner was re-detained by ICE on July 29, 2025, and transferred to NWIPC, where he remains confined to this day. Dkt. No. 12 ¶ 13. Petitioner has spent over five months during his current detention term. *Id.* Aggregating Petitioner's detention terms from December 12, 2022, through March 13, 2023, and from July 29, 2025, until the present date,[3] Petitioner has been detained over eight months since his removal order became final. Dkt. No. 11 at 2; Dkt. No. 12 ¶ 13.

## II.   LEGAL STANDARD

### A.   Writs of Habeas Corpus

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

---

[3] *See infra* Section III.A.1.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment guarantee of due process applies in deportation proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, the Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

**B.     Detention under the INA**

Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period. 8 U.S.C. § 1231(a)(2). Finally, Section 1236(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by [the Secretary of Homeland Security][4] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

---

[4] Although 8 U.S.C. § 1231 refers to "the Attorney General" as having responsibility for detention and removal of noncitizens, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002), transferred this authority to the Secretary of the Department of Homeland Security. *See also* 6 U.S.C. § 251.

ORDER ON WRIT OF HABEAS CORPUS – 4

8 U.S.C. § 1231(a)(6).

While there is no temporal limit on the length of detention in the statute, the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001), observed that "Congress enacted the present law, which liberalizes pre-existing law by shortening the removal period from six months to 90 days, mandat[ing] detention of certain criminal [noncitizens] during the removal proceedings and for the subsequent 90-day removal period . . . ." The Supreme Court reasoned that "[w]hile an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months." *Id*. at 701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The Supreme Court went on to hold that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id*. at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id*. at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id*. at 701. It found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id*. at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*.

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. at 701. However, "[a]fter this 6-month period,

ORDER ON WRIT OF HABEAS CORPUS – 5

once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id*.

### III.    DISCUSSION

The Court begins with a caution from the Supreme Court in *Zadvydas*: "The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. . . . [W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* at 690 (citation modified).

**A.    Continued Detention**

   **1.    The Lenth of Petitioner's Detention Is Beyond What Is Presumptively Reasonable**

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Nevertheless, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Petitioner argues that he has served an aggregate total of 18 months in detention. Dkt. No. 14 at 2. This detention calculation ostensibly includes his time in the custody of the Minnesota State Department of Corrections, during which he served a criminal prison sentence. However, there is no basis to include such time. When determining the length of time allowable for an immigration removal period, the *Zadvydas* Court explicitly discussed that the proceedings

at issue were civil, not criminal, and that the purpose was nonpunitive. 533 U.S. at 701. Nevertheless, Petitioner has been detained for an aggregate total of eight[5] months—over the six months considered presumptively reasonable in *Zadvydas*.

Respondents do not concede that Petitioner has been detained for the six-month presumptively reasonable period but also do not rebut Petitioner's argument that the six-month period can be aggregated with prior immigration detention. Courts in this Circuit have found that the six-month period of detention need not be consecutive to reach the limit established in *Zadvydas*. *See, e.g.*, *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025) ("the 'clock' on *Zadvydas*'s six month period of presumptive reasonability does not re-start with each successive detention"); *Giorges v. Kaiser*, No. C25-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal. Oct. 10, 2025); *Tang v. Bondi*, No. C25-1473, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025); *see also Nguyen v. Scott*, 796 F.Supp.3d 703, 721 (W.D. Wash. Aug. 21, 2025) (finding petitioner was detained for longer than six months by aggregating two separate periods of detention); *Sied v. Nielsen*, No. C17-6785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases). This Court agrees that the six-month period of detention does not need to be consecutive in order to reach the presumptively reasonable period of time. Accordingly, the Court finds that Petitioner has been detained beyond the presumptively reasonable time period.

### 2. Petitioner Provides Good Reason to Believe that There Is No Significant Likelihood of Removal in the Reasonably Foreseeable Future

Petitioner identifies several facts that give the Court good reason to believe he will not be removed to Somalia in the reasonably foreseeable future. First, it has been four years since his

---

[5] Petitioner was detained in immigration detention from December 12, 2022, until his release on March 13, 2023, and was again detained from July 29, 2025, until the present. Dkt. No. 11 at 2; Dkt. No. 12 ¶ 13.

final order of removal. *See* Dkt. No. 1 at 19. Though the removal period has long expired, Respondents have yet to effect Petitioner's removal or even obtain travel documents from Somalia. *See id.* Further, Petitioner notes that Respondents previously "effectively acknowledged that there was no reasonable foreseeable removal to Somalia, because they released him on conditions" in 2023. Dkt. No. 1 at 6. Finally, Petitioner asserts that there is no record of his birth in Somalia (*id.* at 6), which raises a question of whether Somalia will accept him. *See also infra* Section III.A.3.

Accordingly, Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

### 3.     Respondents Fail to Rebut Petitioner's Showing

Respondents argue that removal will occur in the reasonably foreseeable future because (1) the Office of Enforcement and Removal Operations ("ERO") is working to obtain a travel document for Petitioner, and Somalia can issue a travel document in as quickly as two weeks; (2) ERO has confirmed Petitioner's Somalian citizenship and can remove individuals to Somalia based on clear and convincing evidence of citizenship; and (4) there have been an increased number of individuals—123 to be exact—removed to Somalia between October 1, 2024, and September 20, 2025. Dkt. No. 11 at 6. Respondents' arguments are unconvincing.

Respondents claim they are "working" to obtain Petitioner a travel document, and that Somalia can issue those in as quickly as two weeks. *Id.* "The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future." *Hoac v. Becerra*, No. C25-1740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). Further, a statement regarding how quickly a country "can" issue a

travel document is too generic to be of any value. "General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Zhao v. Kelly*, No. C17-777, 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017); *see also Gilali v. Warden of McHenry Cnty. Jail*, No. C19-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status, . . . this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future."); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) ("ICE merely asserts that it has followed up on its request for travel documents from India and done all it can . . . This is not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in the reasonably foreseeable future."); *see also Baltodano v. Bondi*, No. C25-1958, 2025 WL 3484769, at *5 (W.D. Wash. Dec. 4, 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.") (collecting cases).

    Finally, Respondents fail to provide relevant details as to the 123 individuals removed to Somalia in the past year, including: the total number of requests versus the 123 individuals removed and the characteristics of those individuals Somalia has accepted (*e.g.*, whether Somalia is accepting individuals with serious criminal convictions). Without this important and pertinent information, the Court cannot determine that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See Suong v. Bondi,* No. C25-2309, 2025 WL 3718644, at *4 (W.D. Wash. Dec. 23, 2025) (court could not determine likelihood of removal to Cambodia when the Government did not "identify how many requests for travel documents the

United States made to Cambodia that resulted in those 55 removals" (quoting petitioner's briefing)); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025) (court could not determine there was a significant likelihood of removal to Vietnam in the reasonably foreseeable future without information such as total number of requests versus actual number of travel documents issued by Vietnam or the number removed individuals who were similarly situated to petitioner); *Hoac*, 2025 WL 1993771, at *5 (same).

Furthermore, Respondents omit the most glaring piece of information regarding Petitioner's removal timeline—that ICE Officer Cristhian De Castro admits ERO is "waiting for funding" before it can send a full travel-document request to Somalia. Dkt. No. 12 ¶ 15. Respondents do not provide a timeline for funding nor information about what needs to happen for funding to be provided. Notably, Petitioner points out that ERO funding is based on the passing of an agency budget, which would likely not occur until the end of January at the earliest. Dkt. No. 14 at 5. Removal cannot happen until funding is provided, and Respondents offer no information as to when that will occur. Lastly, while Respondents say ERO began the process to prepare removal documents on August 9, 2025 (Dkt. No. 11 at 6), they are completely silent as to why no further action has been taken in the intervening four and a half months.

Accordingly, the Court finds that Respondents fail to meet their burden to rebut Petitioner's showing that there is no significant likelihood of removal in the foreseeable future. Therefore, Petitioner is entitled to habeas relief under *Zadvydas* and should be immediately released from custody.

**B.    Future Re-Detention**

Petitioner seeks an order from the Court that Respondents cannot re-detain Petitioner "without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing

1    evidence based on changed circumstances since Petitioner was previously released." Dkt. No. 1

2    at 23. Where a habeas petitioner raises a Due Process claim and also has invoked the Court's

3    jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the

4    petitioner's] constitutional challenges and to grant injunctive relief in response to them,"

5    "irrespective of the accompanying habeas petition." *Roman v. Wolf,* 977 F.3d 935, 941–42 (9th

6    Cir. 2020). However, the party seeking an injunction must convince the court that relief is

7    needed and that "there exists some cognizable danger of recurrent violation, something more

8    than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d

9    886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

10          Here, Petitioner's petition and reply rely on a recitation of the standards for revocation

11   under the statute and the assertion that Respondents did not properly follow procedures in

12   detaining him on this occasion. Dkt. No. 1 at 11–12; Dkt. No. 11 at 7–8. But Petitioner has not

13   argued that these injuries are likely to recur, and the Court cannot fill in the gaps. *Indep. Towers*

14   *of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the

15   advocates to inform the discussion and raise the issues to the court."); *see also Suong*, 2025 WL

16   3718644, at *5. ("pursuant to the party presentation doctrine, the Court will not invent arguments

17   for" petitioner). Further, should Respondents seek to re-detain Petitioner, both parties will have

18   this Order as a guidepost to consider.

19          Accordingly, the Court must deny Petitioner's request for injunctive relief.

20   **C.      Third-Country Removal**

21          Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking

22   protection in the event Respondents attempt to remove him to a third country. Dkt. No. 1 at 23. It

23   is not clear to the Court whether Petitioner intends to continue pursuing these claims after

24

obtaining his release. Therefore, the Court will direct the parties to meet and confer to discuss whether these claims remain after Petitioner's release.

### IV.   CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED in part and DENIED in part. It is hereby ORDERED:

(1) Respondents SHALL immediately release Petitioner from detention pursuant to the conditions in his preexisting Order of Supervision. Within **twenty-four (24) hours** of this order, Respondents shall provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) The Court DENIES Petitioner's request for injunctive relief regarding any future re-detention.

(3) The Parties are ORDERED to meet and confer to discuss whether Petitioner will continue to pursue his third-country removal claims after his release and, if so, notify the Court by January 13, 2026, of a proposed deadline for any amendments to Petitioner's complaint and Respondents' answer.

Dated this 6th day of January, 2026.

Tana Lin
United States District Judge